UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


STOKES MINERALS COMPANY LLC,
a West Virginia limited
liability company,
RICHARD S. KAVANAUGH, JR., and
MASON A. KAVANAUGH,

Plaintiffs,

v.                                    Civil Action No. 2:20-cv-00364

SOUTHEASTERN LAND, LLC,
a Kentucky limited liability company,

Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending is the motion for entry of default judgment
filed by plaintiffs Stokes Minerals Company LLC, Richard S.
Kavanaugh, Jr., and Mason A. Kavanaugh on August 3, 2020.  ECF
No. 8.


                        I.  Background


        This action, filed on May 27, 2020, concerns a lease
of the right to "mine and remove by deep, strip, and auger
mining methods all of the minable and merchantable coal situate"
within approximately 824.69 acres of land in Mingo County, West
Virginia.  ECF No. 1-1 (1975 Lease), at 3.  On June 14, 1975,
Ethel P. Stokes, the owner of the land in question, leased this

right to David L. Francis.  Id.; ECF No. 1 (Complaint), at ¶¶

10-11.

The 1975 lease contains several provisions relevant to

the plaintiffs' claims.  Article II provides for the following

"Tonnage Royalty":

> Lessee covenants and agrees to pay to Lessor during
> the continuance of this lease, without demand
> therefor, a tonnage royalty on each ton of 2,000
> pounds of coal mined and carried away from or used
> upon or sold from the demised premises for any purpose
> of 75¢ per ton or 5% of the gross selling price,
> f.o.b. the mines, whichever is greater, for each ton
> of coal mined by deep and strip mining methods and 75¢
> per ton or 6% of the gross selling price, f.o.b. the
> mines, whichever is greater, for each ton of coal
> mined by auger mining methods.  On or before the 25th
> day of each calendar month, Lessee shall account to
> Lessor for all of the coal mined during the preceding
> calendar month and Lessee shall pay to Lessor the
> tonnage royalty thus found to be due for such calendar
> month.

ECF No. 1-1, at 4-5.  Under Article III, "Minimum Royalty," the:

> Lessee further covenants to pay a minimum monthly
> royalty of Seven Hundred Dollars ($700.00) for each
> calendar month throughout the term of this lease,
> whether the quantity of coal mined in any of such
> months at the [tonnage] royalty rates aforesaid
> amounts to said sum or not, said minimum royalty to be
> paid on the 25th day of each calendar month in respect
> to the preceding calendar month; provided, however,
> that all tonnage royalty paid during each such
> calendar month shall be credited against the minimum
> monthly royalty due for such calendar month.  If
> Lessee shall not mine in any calendar month enough
> coal which, at the tonnage royalty rate, amounts to
> the minimum monthly royalty for that month, Lessee
> shall have the right during any succeeding months to
> mine, free from tonnage royalty, a sufficient amount

> of coal to make up for the monthly royalty paid in
> excess of the tonnage royalty on the coal actually
> mined and removed; provided further, however, that no
> coal shall be mined free in any month on account of
> any deficiency in the preceding month or months until
> a sufficient amount of coal has been mined to pay the
> minimum monthly royalty for the calendar month in
> which it is intended that coal shall be mined free.

Id. at 5.  Article XVII, which provides for "Wheelage," states that

> Lessee further covenants and agrees to pay to Lessor a
> wheelage charge of 10¢ for each ton of 2,000 pounds of
> coal mined from premises other than the demised
> premises and transferred over, across and through the
> demised premises and to make such payments at the same
> time and in the same manner as tonnage royalty
> payments are required to be made under the provisions
> hereof.

Id. at 12.  Finally, Article XIX, "Parties and Assigns," states that "[t]his agreement shall be binding upon and inure to the benefit of not only the parties hereto, but their heirs, devisees, and assigns."  Id.

        The plaintiffs allege that Stokes Minerals Company LLC ("Stokes Minerals") had, by way of mesne assignments, become lessor under the lease and owner of 96.25% of the mineral interests in the tract of land subject to the 1975 lease by November 30. 2017.  ECF No. 1, at ¶ 12.  Plaintiff Richard Kavanaugh (known as "Pat Kavanaugh") allegedly owns a 1.5% of the mineral interests in the tract, and plaintiff Mason A. Kavanaugh allegedly owns a separate .75% of the mineral

interests therein.  Id. at ¶¶ 13-14.  Pat Kavanaugh also "owns a
portion of the Mineral Interests held by Stokes [Minerals]"
separate from his 1.5% share of the mineral interests, and Mason
Kavanaugh "has a beneficial ownership interest in a portion of
the Mineral Interests held by Stokes [Minerals]" separate from
his .75% share of the mineral interests.  Id.  Thus, according
to the complaint, the plaintiffs in this action collectively
hold 98.5% of the mineral interests in the approximately 824.69
acres leased in the 1975 lease.  Id. at ¶ 15.  Pat Bower, who
declined to join this action, allegedly holds the remaining 1.5%
of the mineral interests.  Id. at ¶ 15.

        On November 30, 2017, Stokes Minerals and defendant
Southeastern Land, LLC ("Southeastern") executed an amendment to
the 1975 lease.  ECF No. 1-2 (Amendment of Lease).  Stokes
Minerals is named as the "Lessor" in the amendment and "owner"
of the "Leased Premises," the "more or less" 824.69 acres in
Mingo County.  Id. at 2.  Southeastern is named as the "Lessee."
Id.  The amendment provides for an additional article to be
added to the lease, "Article XIX.
Indemnification/Insurance/Access to Leased Premises."  Id. at
3-7.  The amendment also states that "[a]ll other terms and
conditions of the Lease not modified herein are in full force
and effect and remain unchanged" and that "[t]his Amendment

shall be binding upon an inure to the benefit of the parties
hereto, their successors, personal representatives and assigns."
Id. at 6.

      Notably absent from this amendment is any mention of
the interests held by Pat Kavanaugh, Mason Kavanaugh, and Pat
Bower.  Additionally, the amendment is only signed by the
President of Southeastern, whose name is illegible, and Stephen
L. Neas, the managing member of Stokes Minerals who has also
provided an affidavit in support of the motion for default
judgment.  Id.; ECF No. 8-1 (Affidavit of Stephen L. Neas).  The
plaintiffs state in their complaint that "[s]ince 2017, the
parties to the Lease have remained unchanged."  ECF No. 1, at ¶
17.

      The plaintiffs assert that prior to the missed
payments that resulted in this action, Southeastern "had
informed Stokes that Southeastern interpreted Article III of the
Lease as requiring Advances to be payed each and every month,
regardless of the amount of [Tonnage] Royalties paid during a
given month."  Id. at ¶ 23.  Southeastern paid the plaintiffs
$690.55 per month as a monthly minimum royalty payment in
accordance with its interpretation of the Article III Minimum

Royalty provision prior to allegedly breaching the lease.[1]  Id.
at ¶¶ 22, 24.

        In August 2018, Southeastern began to fail to pay the
tonnage royalties, minimum royalties, and wheelage owed under
the lease.  See id. at ¶ 28.  According to the plaintiffs, "[b]y
January of 2019, Southeastern had failed to pay Royalties on the
coal it had mined from July 2018 through December 2018."  Id. at
¶ 29.  On February 11, 2019, Stokes Minerals sent notices of
default pursuant to Article XVI of the lease ("Forfeiture on
Default") to four of Southeastern's offices located in
Huntington, West Virginia; Debord, Kentucky; Lexington,
Kentucky; and Lovely, Kentucky pursuant to Article XVI of the
lease ("Forfeiture on Default").[2]  Id. at ¶¶ 30-31.  Southeastern
thereafter paid the royalties due for the months of July 2018
through November 2018 but did not tender payments for subsequent
months as they became due.  Id. at ¶ 32.

--------

[1]     Presumably, the remaining $9.45 of the $700.00 minimum
royalty was paid to Bower.

[2]     The plaintiffs explicitly state in their complaint that
they do not seek forfeiture of the lease under Article XVI but
include the notices as proof that they informed Southeastern of
potential litigation on February 11, 2019.  ECF No. 1, at ¶ 51;
ECF No. 1-3.

The plaintiffs allege that as of May 27, 2020, Southeastern had failed to pay: tonnage royalties on coal mined from December 2018 through May 2019; minimum royalties due from December 2018 through March 2020; and wheelage due for January, February, and March 2019.  Id. at ¶¶ 33-35.  The plaintiffs also state that "[b]ased on information provided by Southeastern and other information, Defendant owes Plaintiffs at least the sum certain of Two Hundred Fifty-Eight Thousand Four Hundred Forty-One Dollars and Twenty-Six Cents ($258,441.26) for outstanding Monthly Payments that were due under the Lease from December 2018 through March 2020, inclusive."  Id. at ¶ 36.

Attached to the complaint is a spreadsheet documenting the monies allegedly owed to the plaintiffs.  ECF No. 1-4.  This spreadsheet indicates that Stokes Minerals is owed: minimum royalties in the amount of $674.80 per month from December 2018 through March 2020, totaling $10,796.80; tonnage royalties from December 2018 through May 2019, totaling $240,659.27; and wheelage from January 2019 through March 2019, totaling $1,090.69.  Id.  This amounts to $252,546.76 owed to Stokes Minerals.  Id.  The spreadsheet indicates that Pat Kavanaugh is owed: minimum royalties in the amount of $10.50 per month from December 2018 through March 2020, totaling $168.00; tonnage royalties from December 2018 through May 2019, totaling

7

$3,744.70; and wheelage from January 2019 through March 2019, totaling $16.97.  Id.  This amounts to $3,929.67 owed to Pat Kavanaugh.  Id.  The spreadsheet indicates that Mason Kavanaugh is owed: minimum royalties in the amount of $5.25 per month from December 2018 through March 2020, totaling $84.00; tonnage royalties from December 2018 through May 2019, totaling $1,872.35; and wheelage from January 2019 through March 2019, totaling $8.49.  Id.  This amounts to $1,964.83 owed to Mason Kavanaugh.  Id.  Finally, the spreadsheet indicates that these amounts, in the aggregate, total $258,441.26.  Id.

The complaint alleges three counts against Southeastern.  In Count One, the plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Southeastern has breached the terms of the lease and owes the plaintiffs $258,441.26.  Id. at ¶¶ 55-56.  Count One also requests that the court award the plaintiffs $258,441.26 pursuant to 28 U.S.C. § 2201(a).  Id.

Count Two alleges common law breach of contract, stating that: "the Lease, which was supported by good and valuable consideration, constitutes a valid contract between Plaintiffs and Defendant"; "the same Lease, as amended on November 30, 2017, constitutes a valid contract, supported by good and valuable consideration, between Plaintiff Stokes and

Defendant"; and Southeastern breached the contract by failing to make the above-noted payments for the months of December 2018 through March 2020.  Id. at ¶¶ 59-61.  Count Two also claims:

> Because Article III of the Lease, entitled Minimum Royalty, states "that all tonnage royalty paid during each such calendar month shall be credited against the minimum monthly royalty due for such calendar month [emphasis added,]" Plaintiffs' recovery should not be reduced by the amounts of the Advances that were due in December 2018 through May 2019 because the Royalties were not paid, have never been paid, and will only be received, if at all, by this Court's judgment—not by Royalty payments received in the months in which the Advances were originally due. Accordingly, and per the terms of the Lease, Article III's credit and set-off is inapplicable.

Id. at ¶ 64 (alteration and emphasis in original).  20

Count Three alleges common law unjust enrichment.  The plaintiffs claim that Southeastern mined and removed coal from December 2018 through March 2019, i.e., the months for which tonnage royalties were allegedly unpaid.  Id. at ¶ 68.  Inasmuch as the defendant failed to make the required payments while maintaining the "sole and exclusive right to mine the Premises" and actually conducting mining operations for its own economic benefit during these months, the plaintiffs assert that the defendant has been unjustly enriched.  Id. at ¶¶ 69-73.

In addition to the declaratory relief and $258,441.26 sought by the plaintiffs, the complaint requests "any and all other further and additional relief, including but not limited

to interest and costs, that this Court deems just and proper."
Id. at ¶ 73.

The record reflects that the Secretary of State for the State of West Virginia accepted service of process for the defendant on May 29, 2020.  ECF No. 4.  No responsive pleading or Federal Rule of Civil Procedure 12 motion has been filed, and the plaintiffs subsequently moved for entry of default on July 7, 2020.  ECF No. 5.  The Clerk entered default on July 14, 2020, pursuant to Federal Rule of Civil Procedure 55(a).  ECF No. 6.

The plaintiffs filed the pending motion for default judgment on August 3, 2020.  ECF No. 8.  For the reasons stated in the complaint, the plaintiffs

> request that this Court enter judgment by default against Southeastern, with such default judgment (1) FINDING and DECLARING that Southeastern has breached the terms of the Lease and, consequently, and (2) ORDERING SOUTHEASTERN to pay to Plaintiffs the sum certain of Two Hundred Fifty-Eight Thousand Four Hundred Forty-One Dollars and Twenty-Six Cents ($258,441.26), plus Plaintiffs' costs and expenses, which include reasonable attorneys' fees and expenses in bringing this action, together with pre-judgment and post-judgment interest.

Id. at 3.

The plaintiffs offer the affidavit of Stokes Minerals managing member Stephen L. Neas in support of the motion.   ECF No. 8-1.   The affidavit attests to the veracity of the factual statements contained in the complaint.   <u>Id.</u> at ¶ 2.   Neas avers that he prepared the spreadsheet attached to the complaint and affirms the accuracy of the numbers contained therein based on "information supplied from Southeastern, information possessed by Plaintiffs, and other reliable information . . . ."   <u>Id.</u> at ¶¶ 7-9.   He further states that all members of Stokes Minerals, as well as the individual plaintiffs in this action, are related and have "agreed that any funds received as a result of any judgment in this matter will be distributed in accordance with the percentages of ownership contained in [the spreadsheet exhibit to the complaint]."   <u>Id.</u> at ¶ 10.

## II.   Legal Standard

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure.   Rule 55(a) states that if a party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."   Fed. R. Civ. P. 55(a).   Once default has been entered by the clerk, a plaintiff may move the court to enter default judgment against the defendant pursuant to Rule 55(b)(2).   Fed. R. Civ. P. 55(b)(2).

11

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]" Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "The defendant is not held . . . to admit conclusions of law." Id. (quoting Nishimatsu, 515 F.2d at 1206) (alteration in original).  "The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action." Id. (citation omitted). "Assuming that the well-pleaded facts demonstrate that the plaintiff is entitled to relief," the court must make an "independent determination" regarding the appropriate remedy. Woods v. Oxford Law, LLC, No. 2:13-6467, 2015 WL 778778, at *3 (S.D. W. Va. Feb. 24, 2015) (citing Ryan, 253 F.3d at 780-81; S.E.C. v. Lawbaugh, 359 F.Supp.2d 418, 422 (D. Md. 2005)).

### III.  Analysis

In West Virginia, "[a] claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." Sneberger v. Morrison, 776 S.E.2d 156, 171 (W. Va. 2015) (citing Syl. Pt. 1, State ex rel. Thornhill Group, Inc. v. King, 759 S.E.2d 795 (2014); Wetzel County Savings & Loan Co. v. Stern Bros., Inc., 195 S.E.2d 732, 736 (1973)).  Accepting the well-pled facts of

the complaint and those evidenced by the exhibits attached thereto as true, the court concludes that a contract was formed and that it was breached by Southeastern when it failed to make the various tonnage royalty, minimum royalty, and wheelage payments owed from December 2018 through March 2020. The court further notes that it is evident that Stokes Minerals is owed the bulk of the money sought in the complaint.

However, it is not entirely clear whether the Kavanaughs hold rights to royalties under the lease. The November 30, 2017 amendment to the 1975 lease represents that Stokes Minerals is the owner of the land in question and the lessor under the lease. Additionally, the complaint indicates that the parties to the lease have remained unchanged since 2017. The amendment does not mention either of the Kavanaughs or Bower, the other three individuals who, according to the complaint, own 3.75% of the mineral interests leased to Southeastern. These facts could indicate that the Kavanaughs are not owed any money for their purported shares in the mineral interests.

On the other hand, Article XIX of the 1975 lease provides that the benefits of the contract shall inure to heirs, devisees, and assigns, which could indicate that the Kavanaughs are entitled to royalties inasmuch as they have acquired a

portion of the mineral rights that were owned by Ethel Stokes at
the time the 1975 lease was executed.  It is also conceivable,
although not explicitly so stated in the complaint, that Stokes
Minerals owned all of the rights in question when it executed
the amendment to the lease on November 30, 2017, and
subsequently conveyed small percentages of the mineral interests
to the Kavanaughs and Bower after that date.  If this is the
case, the benefits of the 1975 lease as well as the amendment
thereto, would inure to the Kavanaughs and Bower under both
documents.

     The court concludes that the latter scenarios are more
plausible than the former and that the Kavanaughs are parties to
the lease.  If this were not the case, Stokes Minerals would
hold the rights to all royalties under the lease.  The damages
sought are apportioned in the spreadsheet according to purported
ownership percentages in the mineral rights, but if Stokes
Minerals held all rights to royalties, it would be entitled to
any royalties that are claimed by the Kavanaughs.  Inasmuch as
Stokes Minerals, which proceeds with the same counsel as the
Kavanaughs, has indicated that the Kavanaughs are owed money for
their separate ownership shares in the mineral interests, it has
essentially conceded that these individual plaintiffs are
parties to the lease and hold rights to royalties thereunder.

Several issues concerning the appropriate amount of monetary relief remain, the first being whether the minimum royalties owed from December 2018 through May 2019 should be set-off by the tonnage royalties owed for those months. The complaint offers two reasons why the set-off should not be reflected in a judgment. The plaintiffs claim that prior to breach, Southeastern had interpreted the lease to require it to pay the minimum royalty each month regardless of the amount of tonnage royalties and had remitted minimum royalties in accordance with this interpretation. They also assert that the set-off is inapplicable under the terms of the 1975 lease inasmuch as Article III specifically provides "all tonnage royalty <u>paid</u> <u>during</u> <u>each</u> <u>such</u> <u>calendar</u> <u>month</u> shall be credited against the minimum monthly royalty due for such calendar month." ECF No. 1-1, at 5 (emphasis added). As a consequence, the plaintiffs claim that the tonnage royalties, if accounted for only by the recovery herein as awarded "by this Court's judgment," will not have been paid <u>during</u> the months in which they are due; and so, the minimum royalties remain owing. ECF No. 1, at ¶ 64.[3]

---

[3]  Of course, none of the royalties would have been contemplated to have been paid <u>during</u> the month for which they were owed inasmuch as the lease specified that such payment would be made by the 25th day of the following month. <u>See</u>, <u>supra</u>, p. 2.

        The plaintiffs' motion for default judgment offers no
further argument or supporting law on either of the points
raised by the complaint.  Moreover, the complaint does not
allege that the parties somehow modified the contract to exclude
Article III's set-off provision; it only alleges that
Southeastern interpreted the contract to require it to pay
minimum royalties regardless of tonnage royalties and previously
compensated the plaintiffs in accordance with this
interpretation.  Inasmuch as Article III plainly provides for
the monthly set-off of minimum royalties against tonnage
royalties, the court at the default judgment stage rejects this
interpretation allegedly held by Southeastern.

        And while Article III does indicate that the set-off
should occur with regard to the tonnage royalty paid for a
calendar month, that article does not state that the set-off
provision is inapplicable if no tonnage royalty is actually paid
though due for a given month.  In light of the fact that the
set-off is clearly meant to benefit Southeastern (or any other
party who has held the rights to mine the property at issue
since 1975), the court concludes that this provision does not
function to require full $700.00 payments of minimum royalties
for months in which tonnage royalties are due but not paid.

Thus, the court finds that the minimum royalties due from December 2018 through May 2019 should be set-off by the tonnage royalties due for those months.  The court further finds it necessary for the plaintiffs to provide damages figures that account for the December 2018 through May 2019 set-off.

Additionally, the complaint states that the mineral interests in question are owned according to the following percentages: 96.25% for Stokes Minerals, 1.5% for Pat Kavanaugh, .75% for Mason Kavanaugh, and 1.5% for Pat Bower.  The complaint asserts that Southeastern had paid the plaintiffs (Stokes Minerals and the Kavanaughs) $690.55 per month in minimum royalties prior to breaching the lease.  The spreadsheet likewise claims that Stokes Minerals is owed $674.80 per month in unpaid minimum royalties while Pat Kavanaugh is owed $10.50 per month and Mason Kavanaugh is owed $5.25 per month, for a total of $690.55 per month.  Inasmuch as the 1975 lease provides for a minimum royalty of $700.00 per month, the $690.55 figure is presumably meant to correlate with the plaintiffs' proportional shares in the mineral interests, with the outstanding $9.45 of the $700.00 to go to Bower.  But $690.55 is 98.65% of $700.00, which is more than the 98.5% of the mineral interests that the plaintiffs assert they collectively own.  An

explanation for this variance should be provided by the plaintiffs.

This issue is further complicated by the fact that the amounts in the spreadsheet only correspond to the amounts the plaintiffs claim as damages and do not include the aggregate amounts of delinquent tonnage royalties, minimum royalties, and wheelage for the relevant months.  In other words, the spreadsheet does not account for delinquent payments on Bower's share in the mineral interests.  The court can surmise that either the ownership shares asserted in the complaint or the minimum royalties claimed as damages in this action are incorrect inasmuch as the 1975 lease sets the gross monthly minimum royalty at $700.00 per month, but the court is unable to make such a determination with regard to tonnage royalties and wheelage since these amounts change from month to month and no gross figure is given for the months of December 2018 through March 2020.

Finally, the court notes that in addition to declaratory relief and $258,441.26 in damages, the complaint requests "any and all other further and additional relief, including but not limited to interest and costs, that this Court deems just and proper."  ECF No. 1, at ¶ 73.  The motion for default judgment likewise requests declaratory relief,

$258,441.26 in damages, and "costs and expenses, which include reasonable attorneys' fees and expenses in bringing this action, together with pre-judgment and post-judgment interest."  ECF No. 8, at 3.  It appearing that there is no provision in the contract for an award of attorney's fees, the plaintiffs present no basis for their entitlement thereto.

Based on the foregoing analysis concerning the monetary relief to be awarded, the court finds default judgment to be premature.  The motion is denied without prejudice.

IV.  Conclusion

Accordingly, it is ORDERED that the plaintiffs' motion for default judgment (ECF No. 8) be, and it hereby is, DENIED without prejudice.  Should the plaintiffs file a subsequent motion for default judgment, they are directed to provide: damages figures that reflect the set-off of minimum royalties against tonnage royalties for December 2018 through May 2019; an explanation of the discrepancy identified in this opinion between ownership shares and claimed damages; and documentation of the aggregate amounts of delinquent payments, including those that may be owed to Bower.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER:  February 1, 2021

John T. Copenhaver, Jr.
Senior United States District Judge