UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


STOKES MINERALS COMPANY LLC,
a West Virginia limited
liability company,
RICHARD S. KAVANAUGH, JR., and
MASON A. KAVANAUGH,

Plaintiffs,

v.                                     Civil Action No. 2:20-cv-00364

SOUTHEASTERN LAND, LLC,
a Kentucky limited liability company,

Defendant.


MEMORANDUM OPINION AND ORDER


        Pending is plaintiffs Stokes Minerals Company LLC,

Richard S. Kavanaugh, Jr., and Mason A. Kavanaugh's Renewed

Motion for Default Judgment, filed on August 24, 2021.  ECF No.

15.


I. Background


A. Procedural Background


        Plaintiffs filed this action on May 27, 2020.  ECF No.

1.  The original complaint alleged three counts against

Southeastern Land, LLC ("Southeastern"): (I) declaratory

judgment, (II) breach of contract, and (III) unjust enrichment.

Id. at ¶¶ 37–73.

The record reflects that the Secretary of State for the State of West Virginia accepted service of process for Southeastern on May 29, 2020.  ECF No. 4.  No responsive pleading or Federal Rule of Civil Procedure 12 motion was filed, and the plaintiffs subsequently moved for entry of default on July 7, 2020.  ECF No. 5.  The Clerk entered default against Southeastern as to the original complaint on July 14, 2020.  ECF No. 6.

The plaintiffs filed their first motion for default judgment on August 3, 2020.  ECF No. 8.  The court denied the motion without prejudice on February 1, 2021, raising several issues with the plaintiffs' motion, complaint, and exhibits to the complaint.  ECF No. 9.[1]

To address the court's concerns, plaintiffs moved for leave to amend their complaint.  ECF No. 10.  The Court granted the motion for leave on July 7, 2021, indicating that the amended complaint resolved all the issues identified in the

---

[1]     Specifically, the court expressed concerns with: (1) the plaintiff's failure to set-off minimum royalties against tonnage royalties due under the 1975 lease as amended on November 30, 2017, for the months of December 2018 through May 2019; (2) the listed variance between the shares in the mineral interests at issue and the claimed shares of monthly minimum royalties; and (3) the plaintiffs' failure to account for aggregated amounts owed to the plaintiffs and non-party Pat Bower.  ECF No. 9, at 17–19.

court's memorandum opinion and order denying without prejudice the motion for default judgment.  ECF No. 11.  The First Amended Complaint was filed the same day.  ECF No. 12.

Plaintiffs served Southeastern with the First Amended Complaint by U.S. Mail on July 7, 2021.  ECF No. 14. Southeastern did not file a responsive motion or answer, and on August 24, 2021, plaintiffs filed the renewed motion for default judgment.  ECF No. 15.

On November 5, 2021, this court entered an order directing the Clerk of Court to enter default, pursuant to the provisions of Federal Rule of Civil Procedure 55(a) against Southeastern as to the First Amended Complaint.  ECF No. 16. The Clerk's entry of default was filed on November 10, 2021. ECF No. 17.  A return receipt card was filed on the court's docket on November 16, 2021, indicating that Southeastern received the Clerk's entry of default.

B. Factual Background

According to the First Amended Complaint,[2] by a June 14, 1975 lease agreement ("1975 lease"), Ms. Ethel P. Stokes

---

[2]   The facts as alleged in the First Amended Complaint are similar to those alleged in the plaintiffs' original complaint and thus, the facts as laid out here are substantially similar to those provided in the court's memorandum opinion and order on the first motion default judgment.  See ECF No. 9.

owned certain land situate in Mingo County, West Virginia (the

"premises").  First Am. Compl. ¶ 10, ECF No. 12.  On June 14,

1975, Ms. Stokes "granted Mr. David L. Francis the sole and

exclusive right to mine and remove by deep, strip, and auger

mining methods all of the minable and merchantable coal on the

Premises."  Id. at 10 (citing 1975 Lease, ECF No. 13-1).

Article II of the 1975 lease provides for the

following "tonnage royalty":

> Lessee covenants and agrees to pay to Lessor
> during the continuance of this lease, without
> demand therefor, a tonnage royalty on each ton of
> 2,000 pounds of coal mined and carried away from
> or used upon or sold from the demised premises
> for any purpose of 75¢ per ton or 5% of the gross
> selling price, f.o.b. the mines, whichever is
> greater, for each ton of coal mined by deep and
> strip mining methods and 75¢ per ton or 6% of the
> gross selling price, f.o.b. the mines, whichever
> is greater, for each ton of coal mined by auger
> mining methods.  On or before the 25th day of
> each calendar month, Lessee shall account to
> Lessor for all of the coal mined during the
> preceding calendar month and Lessee shall pay to
> Lessor the tonnage royalty thus found to be due
> for such calendar month.

ECF No. 13-1, at 4–5.

Article III of the 1975 lease provides for the

following "minimum royalty":

> Lessee further covenants to pay a minimum monthly
> royalty of Seven Hundred Dollars ($700.00) for
> each calendar month throughout the term of this
> lease, whether the quantity of coal mined in any

4

of such months at the royalty rates aforesaid
amounts to said sum or not, said minimum royalty
to be paid on the 25th day of each calendar month
in respect to the preceding calendar month;
provided, however, that all tonnage royalty paid
during each such calendar month shall be credited
against the minimum monthly royalty due for such
calendar month.  If Lessee shall not mine in any
calendar month enough coal which, at the tonnage
royalty rate, amounts to the minimum monthly
royalty for that month, Lessee shall have the
right during any succeeding months to mine, free
from tonnage royalty, a sufficient amount of coal
to make up for the monthly royalty paid in excess
of the tonnage royalty on the coal actually mined
and removed; provided further, however, that no
coal shall be mined free in any month on account
of any deficiency in the preceding month or
months until a sufficient amount of coal has been
mined to pay the minimum monthly royalty for the
calendar month in which it is intended that coal
shall be mined free . . ..

Id. at 5.


Article XVII of the 1975 lease provides for

"wheelage," stating that


Lessee further covenants and agrees to pay to Lessor a
wheelage charge of 10¢ for each ton of 2,000 pounds of
coal mined from premises other than the demised
premises and transferred over, across and through the
demised premises and to make such payments at the same
time and in the same manner as tonnage royalty
payments are required to be made under the provisions
hereof.

Id. at 12.


Finally, Article XIX of the 1975 lease states that

"[t]his agreement shall be binding upon and inure to the benefit

of not only the parties hereto, but their heirs, devisees and assigns."   Id.

Plaintiffs allege that by November 30, 2017, Stokes Minerals, by way of mesne assignments, became lessor and owner under the 1975 lease, as set forth below.   First Am. Compl. ¶ 12.   Additionally, the plaintiffs allege that Stokes Minerals currently owns 96.4% of the total mineral interests in the premises described in the 1975 lease.   Id. at ¶ 13.   Plaintiff Richard Kavanaugh ("Pat Kavanaugh") allegedly owns 1.5% of the mineral interest in the tract, and plaintiff Mason Kavanaugh owns 0.6% of the mineral interests.   Id. at ¶¶ 14, 15.   Accordingly, the plaintiffs allege that they collectively own 98.5% of the mineral interests.   Id. at ¶ 16.   The remaining 1.5% interest is purportedly owned by non-party Mr. Pat Bower ("Bower").   Id.[3]

On November 30, 2017, Stokes Minerals LLC ("Stokes Minerals") and Southeastern executed an amendment of the 1975 lease.   Amendment of Lease, ECF No. 13-2.   Pursuant to the amendment, Stokes Minerals is named as the "Lessor" and "owner" of the leased premises, and Southeastern is named as the

---

[3]     Plaintiffs assert that they have contacted Bower, but he has to date refused to join in this action.   First Am. Compl. ¶ 16.

"Lessee".  Id. at 2.  The amendment states that an additional article shall be added to the 1975 lease, "Article XIX. Indemnification/Insurance/Access to Leased Premises."  Id. at 3. The amendment also states that "[a]ll other terms and conditions of the Lease not modified herein are in full force and effect and remain unchanged," and that "[t]his Amendment shall be binding upon and inure to the benefit of the parties hereto, their successors, personal representatives and assigns."  Id. at 6.

While Stokes Minerals is referred to as the lessor and owner under the 1975 lease as amended on November 30, 2017, based upon the allegations in the First Amended Complaint, it is apparent that minor ownership interests are held by the Kavanaughs and Bower.

Pursuant to Article III of the 1975 lease, plaintiffs state that Southeastern paid the plaintiffs $689.50 of the $700.00 monthly minimum royalty payment every month.  See First Am. Compl. at ¶ 23.[4]  However, beginning in August 2018, plaintiffs allege that Southeastern began to miss the required monthly payments.  Id. at ¶ 27.  By the following January,

---

[4]     As noted in this court's previous order on default judgment, it is presumed that the remaining $10.50 of the $700.00 royalty was paid to Bower.

plaintiffs assert that Southeastern failed to pay royalties on the coal it had mined from July through December 2018.  Id. at ¶ 28.  Accordingly, on February 11, 2019, Stokes Minerals sent default notices, pursuant to Article XVI of the 1975 lease, to four of Southeastern's offices.  Id. at ¶¶ 29–30; Default Notices, ECF No. 13-3.

Thereafter, plaintiffs aver Southeastern "eventually" paid the royalties that were due for July through November 2018, but failed to make further monthly payments, make tonnage royalty payments that were due from December 2018 through May 2019, pay advances that were due under the lease from June 2019 through May 2021, and pay wheelage for January, February, and March of 2019.  First Am. Compl. ¶¶ 31–35.

Plaintiffs allege that "[b]ased on royalty reports provided by Southeastern, . . . Defendant owes Plaintiffs at least the sum certain of Two Hundred Sixty-Seven Thousand Eighty-Four Dollars and Forty Cents ($267,084.40) for outstanding Monthly Payments that were due under the Lease from December 2018 through May 2021, inclusive."  Id. at ¶ 35 (citing Royalty Reports, ECF No. 13-4).

Attached to the First Amended Complaint is a spreadsheet indicating the monies allegedly owed to the plaintiffs.  Spreadsheet, ECF No. 12-1.  According to the

8

spreadsheet, Stokes Minerals is owed: tonnage royalties from

December 2018 through May 2019, totaling \$244,104.33;[5] wheelage

from January through March 2019, totaling \$1090.69; and minimum

royalties in the amount of \$674.80 per month from June 2019

through May 2021, totaling \$16,194.20.  According to the

spreadsheet, this amounts to \$261,390.20.  The spreadsheet

indicates that Pat Kavanaugh is owed tonnage royalties from

December 2018 through May 2019, totaling \$3,798.31;[6] wheelage

from January through March 2019, totaling \$16.98; and minimum

royalties in the amount of \$10.50 per month from June 2019

through May 2021, totaling \$252.  According to the spreadsheet,

this amounts to \$4,067.28.  The spreadsheet indicates that Mason

Kavanaugh is owed tonnage royalties from December 2018 through

May 2019, totaling \$1,519.32;[7] wheelage from January through

March 2019, totaling \$6.79; and minimum royalties in the amount

of \$4.20 per month from June 2019 through May 2021, totaling

\$100.80.  According to the spreadsheet, this amounts to

\$1,626.92.  In the aggregate, the spreadsheet indicates that the

---

[5]    This figure accounts for \$248,143.13 in tonnage royalties
set-off by the minimum royalties for the months of December 2018
through May 2019.
[6]    This figure accounts for \$3,861.31 in tonnage royalties
set-off by minimum royalties for the months of December 2018
through May 2019.
[7]    This figure accounts for \$1,544.52 in tonnage royalties
set-off by the minimum royalties for the months of December 2018
through May 2019.

plaintiffs are owed $267,084.40.[8]  Finally, the spreadsheet

indicates the amounts purportedly owed to Bower, which totals

$4,067.28.

        The First Amended Complaint alleges three counts

against Southeastern.  In Count One, the plaintiffs seek a

declaratory judgment pursuant to 28 U.S.C. § 2201(a) that

Southeastern has breached the terms of the lease and owes the

plaintiffs $267,084.40.  First Am. Compl. ¶¶ 54-55.  Count One

also asks the court to award the plaintiffs a joint judgment of

$267,084.40 pursuant to 28 U.S.C. § 2201(a).  Id. at ¶ 56.

        Count Two alleges that the 1975 lease, as amended on

November 30, 2017, constitutes a valid contract between Stokes

Minerals and Southeastern and that Southeastern breached the

contract by failing to make the required payments for the months

of December 2018 through May 2021.  Id. ¶¶ 58-60.  Accordingly,

Count Two asserts that plaintiffs are jointly entitled to

$267,084.40 for the outstanding monthly payments due under the

lease.  Id. at ¶ 64.

---

[8]    By the court's calculations, Stokes Minerals is owed a
total $261,390.22; Pat Kavanaugh is owed a total of $4,067.29;
and Mason Kavanaugh is owed a total of $1,626.91.  Accordingly,
in the aggregate, the correct amount owed to the plaintiffs is
$267,084.42, a mere $0.02 greater than listed on the spreadsheet
and in the plaintiffs' First Amended Complaint.

Count Three alleges common law unjust enrichment. Plaintiffs claim that Southeastern mined and removed coal on the premises from November 2018 through April 2019 without paying the plaintiffs the required monthly payments or tonnage royalties on the mined coal.  Id. at ¶¶ 66-67.  Plaintiffs submit that Southeastern failed to make required payments while retaining the benefits of possessing the sole and exclusive right to mine the premises.  Id. at ¶¶ 68-69.  Accordingly, they allege that Southeastern has been unjustly enriched by the retention of those benefits.  Id. at ¶¶ 71-72.

Plaintiffs' renewed motion for default judgment asks the court to enter an order declaring that Southeastern has breached the terms of the 1975 lease and ordering Southeastern to pay plaintiffs $267,084.40 in damages.  ECF No. 15, at 4.

## II.  Legal Standard

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure.  Rule 55(a) states that if a party has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once default has been entered by the clerk, a plaintiff may move the court to enter default judgment against the defendant pursuant to Rule 55(b)(2).  Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "The defendant is not held . . . to admit conclusions of law."  Id. (quoting Nishimatsu, 515 F.2d at 1206) (alteration in original).  "The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action."  Id. (citation omitted).  "Assuming that the well-pleaded facts demonstrate that the plaintiff is entitled to relief," the court must make an "independent determination" regarding the appropriate remedy.  Woods v. Oxford Law, LLC, No. 2:13-6467, 2015 WL 778778, at *3 (S.D. W. Va. Feb. 24, 2015) (citing Ryan, 253 F.3d at 780-81; S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005)).

### III.  Analysis

In West Virginia, "[a] claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages."  Sneberger v. Morrison, 776 S.E.2d 156, 171 (W. Va. 2015) (citing Syl. Pt. 1, State ex rel. Thornhill Group, Inc. v. King, 759 S.E.2d 795 (2014); Wetzel County Savings & Loan Co. v. Stern Bros., Inc., 195 S.E.2d 732, 736 (1973)).

As noted in its memorandum opinion and order on the plaintiffs' first motion for default judgment, accepting the well-pled facts of the complaint and those evidenced by the exhibits attached thereto as true, a contract was formed between Stokes Minerals and Southeastern.  That contract was breached by Southeastern when it failed to make the various tonnage royalty, minimum royalty, and wheelage payments owed.  Additionally, it is evident that Stokes Minerals is owed the bulk of the money sought in the complaint.

The court once again notes that the royalties owed to the Kavanaughs and Bower under the 1975 lease are less clear. See ECF No. 9, at 13–14.  Pursuant to the November 2017 amendment to the 1975 lease, Stokes Minerals is the owner of the premises and is the lessor under the lease.  Additionally, the First Amended Complaint continues to allege that the parties to the lease have remained unchanged since 2017.  First Am. Compl. ¶ 19.  Despite the fact that the 2017 amendment does not mention either of the Kavanaughs or Bower, the First Amended Complaint alleges that the Kavanaughs and Bower collectively own 3.6% of the mineral interests under the 1975 lease.  Id. at ¶¶ 15–16.

In its previous order, the court posited three possible scenarios relating to the ownership of the mineral rights.  ECF No. 9, at 13–14.  First, it is possible that the

13

Kavanaughs and Bower are not parties to the lease and thus are not owed any money for their purported shares in the mineral interests.  Second, it is conceivable, pursuant to Article XIX of the 1975 lease, that the Kavanaughs and Bower acquired a portion of the mineral rights that were owned by Ethel Stokes at the time the 1975 lease was executed.  Third, it is similarly conceivable, although not specifically alleged in either complaint, that Stokes Minerals owned all of the mineral rights in question when it executed the amendment to the lease in 2017, and subsequently conveyed small percentages of its interest to the Kavanaughs and Bower.

Once again, the court concludes that the second and third scenarios are more plausible than the first, because otherwise Stokes Minerals would hold all the royalties under the 1975 lease, as amended on November 30, 2017, and thus would be entitled to all the royalties that are sought in this civil action, plus those that are purportedly owed to Bower. Accordingly, inasmuch as Stokes Minerals has indicated that the Kavanaughs are owed money for their separate ownership shares in the mineral interests, it has essentially conceded that these individual plaintiffs are parties to the lease and hold rights to royalties thereunder.  This conclusion is further supported by the "Royalty Reports" that plaintiffs submitted as an exhibit

14

to their complaint, which indicate that the Kavanaughs and Bower collectively own 3.6% of the rights under the lease.  Royalty Reports, ECF No. 13-4.[9]

The court is further satisfied that the plaintiffs have provided factual support for the damages they seek.  The Royalty Reports indicate the tonnage royalties and wheelage owed to Stokes Minerals, the Kavanaughs, and Bower for the months of December 2018 through May 2019.  Id.  The spreadsheet provided to the court sets-off the minimum royalties against the tonnage royalties due under the 1975 lease for those months.  ECF No. 13-5.[10]  Additionally, the spreadsheet accurately calculates the monthly minimum royalties due to each of the plaintiffs as well as the delinquent payments that would be due to Bower, based on their established shares in the mineral interests.  ECF No. 13-5.  Together, the documents support a finding that the plaintiffs are collectively entitled to the $267,084.40 they seek.

---

[9]     These reports are printed on Southeastern Land, LLC letterhead, and indicate the royalties owed to Stokes Minerals and the named individuals from December 2018 through May 2019.
[10]     As previously discussed by the court, Article III of the 1975 lease provides that "all tonnage royalty paid during each such calendar month shall be credited against the minimum monthly royalty due for such calendar month."  ECF No. 13-1, at 5.

Finally, the court notes that although attorneys' fees were sought in the original complaint, the First Amended Complaint no longer claims entitlement to these fees.

Inasmuch as the court has concluded that Southeastern breached the terms of the 1975 lease, as amended on November 30, 2017, and that the plaintiffs have provided sufficient documentation to support their claimed damages, the court finds that the plaintiffs are entitled to an entry of default judgment.

## IV.   Conclusion

Accordingly, it is ORDERED that the plaintiffs' renewed motion for default judgment (ECF No. 15) be, and hereby is, GRANTED.  The court declares that Southeastern Land, LLC has breached the terms of the 1975 lease, as amended on November 30, 2017, and plaintiffs are jointly entitled to damages in the amount of $267,084.40.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER:   November 19, 2021

_____
John T. Copenhaver, Jr.
Senior United States District Judge

16